## OAKLEY *against* CRENSHAW.

The payment of a balance of account, by a factor, or commission merchant, to his principal, after the sales made, and for the purpose of closing the accounts between the parties, is an assumption of the outstanding debts; and consequently the principal is no longer accountable, or bound to refund advances, though the debtors finally fail to pay or goods sold on commission, the proceeds of which were looked to for re-imbursement.

ASSUMPSIT for money advanced, tried at the New York sittings, in June, 1822, before WOODWORTH, J. when a verdict was taken for the plaintiff, subject to the opinion of this Court, upon a case as follows: On the 22d May, 1815, the defendant, a merchant at Richmond in Virginia, shipped by the schooner Octavo, to the plaintiff, a commission merchant in New York, 27 kegs of tobacco, consigned to the plaintiff to be sold on account of the defendant, which the plaintiff received. On the 9th of June, 1815, the plaintiff received of the defendant 27 other kegs of tobacco, by the schooner Traverse the Ocean, for sale on account of the defendant. The last parcel was first sold; and the plaintiff, by letter of the 17th June, 1815, enclosed to the defendant the account of sales, stating net proceeds $880 03, due per average the 27th September (then) next, and wrote; "If you want the money, I will remit you on your allowing me 1½ per cent. as a guaranty for amount out-standing, you to have the benefit of exchange to the extent that is in favor of your bill, should it be drawn by you on me." The defendant drew accordingly, and his bill was paid, July 15th, 1815.

But 4 kegs of the first parcel were sold till the 20th October, 1815, when the remaining 23 kegs were sold by the plaintiff to E. Whitaker, for $854 27, on the usual term of credit, on the sale of tobacco, at that period at New York. On the 26th September, 1815, the defendant wrote to the plaintiff thus: "In a letter written the 12th inst. I advised you of my intention to draw for $600, at 60 days, on account of the tobacco in your possession. Not having heard from you since, I have given Mr. Robinson a draft for that sum, which you will please accept. The season being near at hand, I hope you will be enabled to make an advantageous sale of my tobacco, &c." This bill was accepted and paid by the plaintiff, November 28th, 1815. On the 26th October preceding, the plaintiff had enclosed to the defendant an

account of sales of the parcel first received, and wrote thus :

"I have now to hand you an account of sales of your tobacco ; net proceeds, $918 98, due per average 11th February next ; errors and outstanding debts excepted ; also statement of accounts showing $344 50 balance. I would remark, that I consider the sale of your tobacco rather chance than otherwise, at the price obtained, &c." For this balance, the defendant drew a bill on the plaintiff, which he refused to accept ; and by his letter of February 1st, 1816, assigned as a reason, disappointment in not receiving moneys from the country, and among others from Whitaker ; saying that when paid, he would advise the defendant, in which event, he advises him to draw for $2 86 less. On the 16th April, 1816, the plaintiff wrote, "Last evening, I received in part pay of note of Whitaker, which included yours, among other sums. Although it would be but right that you should have only your proportion ; yet I am desirous not to have the account stand open. Therefore, you may draw for $341 32, being net sum, after deducting sundry postages." This sum was shortly afterwards paid, on the defendant's draft, as proposed by the letter. In April, 1816, the plaintiff accepted Whitaker's draft for $4000 in favor of one Neeland, and took a bond and warrant of Whitaker as a counter security. It appeared in proof that, at the time of the sale to Whitaker, he was a man in good credit, who had been long a customer of the plaintiff, and in the habit of purchasing tobacco from him ; and that he made use of every effort to collect the money of Whitaker without success. Whitaker afterwards failed and took the benefit of the insolvent act. In April, 1817, the plaintiff caused to be presented to the defendant an account current, charging him with the amount of the several drafts paid on his account ; with the charges on the tobacco ; with $1\frac{1}{2}$ per cent. on the guaranty on tobacco by the Traverse the Ocean, and crediting the several sums received from sales of the tobacco, and showing a balance due to the plaintiff of $652 59. This account the defendant refused to pay, stating as the ground of his refusal, that the plaintiff had guarantied the sale to Whitaker. This was the only objection he made when the account was presented ;

but he added, generally, that he should resist the payment on every ground he could.

*D. B. Ogden*, for the plaintiff, insisted that there was no guaranty of the sales as to that part of the tobacco received by the Octavo; and the money being paid on the faith of Whitaker's debt, which had failed, the plaintiff was entitled to recover. The defendant was the principal debtor. Whitaker was looked to as a mere surety.

*W. Slosson*, for the defendant, insisted, that the authority given by the plaintiff, by his letter of the 16th of April, 1816, to draw for the $341 32 balance, especially after having, by his letter of the 1st February declined payment, and the acceptance and payment of the draft drawn pursuant to that authority, was a full settlement of the account between the parties.

The payment of a balance of account by a factor to his principal, is, in law, an assumption of the outstanding debts; and closes the transactions between them, especially when done, as in this instance, after the sales made, with full knowledge of all circumstances and for that express purpose. (*Consequa* v. *Fanning*, 3 John. Ch. Rep. 600, 5 Res. *Simpson* v. *Swan*, 3 Campb. Rep. 291.)

*Curia*, per SAVAGE, Ch. J. There was no agreement to guaranty the sales of the tobacco by the Octavo; but merely to advance 600 dollars, before the sale of any part of this consignment, except the 4 kegs. The plaintiff would clearly be entitled to recover, was it not for his payment of the balance, the 341 dollars 32 cents. On the 1st of February, 1816, the plaintiff wrote to the defendant, "as soon as the funds of yours is received, you shall have prompt advice thereof;" and on the 16th of April, writing again, and alluding to his letter of the 1st of February, he says, "Last evening, I received in part pay of note of Whitaker, which included yours among other sums. Although it would be but right that you should have only your proportion, yet I am desirous not to have the account stand open. Therefore you may draw for $341 32, &c." This seems to me a final

settlement and assumption of the debt due from Whitaker. About this time, the plaintiff accepted a draft of Whitaker for 4000 dollars, and took counter security. If he did not intend to assume this debt of the defendant, he surely ought to have informed him. (*Consequa* v. *Fanning*, 3 John. Ch. Rep. 600.)

Judgment for the defendant.